FILED
CLERK
4:17 pm, Dec 04, 2019
U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
---------------------------------------------------------X
JEFFREY LITWIN,

                Plaintiff,        **MEMORANDUM OF**
                                         **DECISION & ORDER**
       -against-                2:18-cv-00213 (ADS)

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.
---------------------------------------------------------X

**APPEARANCES:**

**Grey and Grey LLP**
*Attorneys for the Plaintiff*
360 Main Street
Farmingdale, NY 11735
      By:    Ronald L. Epstein, Esq., Of Counsel.

**United States Attorney's Office**
*Attorneys for the Defendant*
610 Federal Plaza
Central Islip, NY 11722
      By:    Megan Jeanette Freismuth, Assistant United States Attorney.

**SPATT, District Judge**:

      On January 12, 2018, plaintiff Jeffrey Litwin (the "Plaintiff" or "Litwin") commenced this appeal pursuant to the Social Security Act, 42 U.S.C. § 405 *et seq.* (the "Act"), challenging a final determination by the Acting Commissioner of the Social Security Administration (the "Defendant" or the "Commissioner") that he was ineligible to receive disability insurance benefits.

      Presently before the Court are the parties' cross motions, pursuant to Federal Rule of Civil Procedure ("FED. R. CIV. P." or "Rule") 12(c) for a judgment on the pleadings. For the reasons that follow, the Court denies the Plaintiff's motion and grants the Defendant's motion.

# I. BACKGROUND

The Plaintiff is a 45 year-old man who injured his lower back at work on October 31, 2008. At the time of his accident, the Plaintiff worked as a truck driver and route manager for a battery marketing and distribution company.

On September 25, 2013, the Plaintiff filed a claim for disability insurance benefits, alleging disability since the date of his accident. The Commissioner denied the Plaintiff's application, and the Plaintiff requested a hearing before an administrative law judge.

On March 15, 2016, the Plaintiff appeared with counsel and testified at a hearing before Administrative Law Judge Patrick Kilgannon (the "ALJ"). A subsequent hearing was held on July 26, 2016.

On August 10, 2016, the ALJ issued a decision, finding the Plaintiff was not disabled under the Act. The Plaintiff requested review of the ALJ's decision, which was denied by the Appeals Council on November 20, 2017, making the ALJ's decision the final decision of the Commissioner.

On January 12, 2018, the Plaintiff filed the instant action. The parties submitted this matter to the Court fully briefed on December 4, 2018.

For purposes of these motions, familiarity with the underlying administrative record is presumed. The Court's discussion of the evidence will be limited to the specific challenges and responses presently raised by the Plaintiff and the Defendant. In this regard, references to the record are denoted as "R."

## II. DISCUSSION

**A. THE STANDARD FOR BENEFITS UNDER THE ACT.**

The Act defines the term "disability" to mean an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A person may only be disabled if his "impairments are of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A).

In determining whether a person is disabled, the Commissioner is required to apply the five-step sequential process promulgated by the Social Security Administration, set forth in 20 C.F.R. § 404.1520. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999). The Plaintiff bears the burden of proving the first four steps, but then the burden shifts to the Commissioner at the fifth step to prove that the Plaintiff is capable of working. *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009); *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008); *Rosa*, 168 F.3d at 77; *see also Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996) ("If the claimant satisfies her burden of proving the requirements in the first four steps, the burden then shifts to the [Commissioner] to prove in the fifth step that the claimant is capable of working."). "If at any step a finding of disability or nondisability can be made, the [Social Security Administration] will not review the claim further." *Barnhart v. Thomas*, 540 U.S. 20, 24, 124 S. Ct. 376, 379, 157 L.Ed. 2d 333 (2003).

Under the five-step sequential evaluation process, the decision-maker decides:

(1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a "residual functional capacity"

assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014); *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir. 1996); *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam); 20 C.F.R. §§ 404.1520, 416.920. When conducting this analysis, the ALJ must consider the objective medical facts; the diagnoses or medical opinions based on these facts; the subjective evidence of pain and disability; as well as the plaintiff's age, background, education and work experience. *Mongeur v. Heckler*, 722 F.2d 1033, 1037 (2d Cir. 1983) (per curiam).

**B. THE STANDARD OF REVIEW.**

"Judicial review of the denial of disability benefits is narrow" and "[t]he Court will set aside the Commissioner's conclusions only if they are not supported by substantial evidence in the record as a whole or are based on an erroneous legal standard." *Koffsky v. Apfel*, 26 F. Supp. 2d 475, 478 (E.D.N.Y. 1998) (Spatt, J.) (citing *Bubnis v. Apfel*, 150 F.3d 177, 179–81 (2d Cir. 1998)); *accord Machadio v. Apfel*, 276 F.3d 103, 108 (2d Cir. 2002) (citing *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000)); 42 U.S.C. § 504(g); *see also Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990) ("Where there is substantial evidence to support either position, the determination is one to be made by the factfinder."). The ALJ is required to set forth those crucial factors used to justify his or her findings with sufficient particularity to allow the district court to make a determination regarding the existence of substantial evidence. *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).

Accordingly, "the reviewing court does not decide the case de novo." *Pereira v. Astrue*, 279 F.R.D. 201, 205 (E.D.N.Y. 2010) (citing *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004)). Rather, "the findings of the Commissioner as to any fact, if supported by substantial

evidence, are conclusive," *id.* (citing 42 U.S.C. § 405(g)), and therefore, the relevant question is not "whether there is substantial evidence supporting the [plaintiff's] view"; instead, the Court "must decide whether substantial evidence supports *the ALJ's decision*." *Bonet v. Colvin*, 523 F. App'x 58, 59 (2d Cir. 2013) (emphasis in original). In this way, the "substantial evidence" standard is "very deferential" to the Commissioner, and allows courts to reject the ALJ's findings "'only if a reasonable factfinder would have to conclude otherwise.'" *Brault v. Soc. Sec. Admin.*, 683 F.3d 443, 448 (2d Cir. 2012) (per curiam) (quoting *Warren v. Shalala*, 29 F.3d 1287, 1290 (8th Cir. 1994) (emphasis in original)). This deferential standard applies not only to factual determinations, but also to "inferences and conclusions drawn from such facts." *Pena v. Barnhart*, No. 01-cv-502, 2002 WL 31487903, at *7 (S.D.N.Y. Oct. 29, 2002) (*citing Levine v. Gardner*, 360 F.2d 727, 730 (2d Cir. 1966)).

"Substantial evidence means 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Burgess v. Astrue*, 537 F.3d 117, 127–28 (2d Cir. 2008) (quoting *Halloran*, 362 F.3d at 31); *accord Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L.Ed. 2d 842 (1971); *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams*, 859 F.2d at 258 (citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488, 71 S. Ct. 456, 464, 95 L.Ed. 456 (1951)).

An ALJ's findings may properly rest on substantial evidence even where he or she fails to "recite every piece of evidence that contributed to the decision, so long as the record 'permits [the Court] to glean the rationale of an ALJ's decision.'" *Cichocki v. Astrue*, 729 F.3d 172, 178 n.3 (2d

Cir. 2013) (per curiam) (quoting *Mongeur*, 722 F.2d at 1040). This remains true "even if contrary evidence exists." *Mackey v. Barnhart*, 306 F. Supp. 2d 337, 340 (E.D.N.Y. 2004) (*citing DeChirico v. Callahan*, 134 F.3d 1177, 1182 (2d Cir. 1998)).

The Court is prohibited from substituting its own judgment for that of the Commissioner, even if it might understandably have reached a different result upon a de novo review. *See Koffsky*, 26 F. Supp. at 478 (quoting *Jones v. Sullivan*, 949 F.2d 57, 59 (2d Cir. 1991)); *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

**C. APPLICATION TO THE FACTS OF THIS CASE.**

The Plaintiff alleged disability due to lumbar spine and left knee impairments. The ALJ applied the Commissioner's five-step sequential evaluation process and determined that the Plaintiff was not disabled on or prior to his December 31, 2010 date last insured. At the first step, the ALJ found that the Plaintiff had not engaged in substantial gainful activity from October 31, 2008, his alleged onset of disability date, through his date last insured. At the second step, the ALJ found that the Plaintiff's lumbar spine and left knee impairments were severe impairments. At step three, the ALJ found that the Plaintiff's impairments, whether considered singly or in combination, did not meet or medically equal the criteria for any Listed impairment. After step three, but prior to step four, the ALJ determined that the Plaintiff retained the residual functional capacity ("RFC") to perform light work with the following additional limitations: no climbing ladders, ropes, or scaffolds; occasionally climbing ramps and stairs; and, occasional balancing, stooping, kneeling, crouching, and/or crawling. At the fourth and final step, the ALJ determined that, on or prior to the Plaintiff's date last insured, he was not disabled because, based on his RFC and the testimony of a vocational expert, he retained the RFC to perform his past relevant work as a sales agent, a position he held in 1998. R. at 429–30.

In this appeal, the Plaintiff objects to the RFC fashioned by the ALJ and, correspondingly, the ALJ's determination that he could perform his past work as a sales agent. The regulations define RFC as "the maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs." 20 C.F.R. Part 404 Subpt. P App. 2, § 200.00(c); *see also* 20 C.F.R. § 404.1545(a); 20 C.F.R. § 416.967; *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (defining RFC as the "maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis" (quoting SSR 96–8p)). This determination requires consideration of "a claimant's physical abilities, mental abilities, symptomology, including pain and other limitations which could interfere with work activities on a regular and continuing basis." *Pardee v. Astrue*, 631 F. Supp. 2d 200, 210 (N.D.N.Y. 2009) (quoting 20 C.F.R. § 404.1545(a)). It takes into account "all the relevant evidence, including medical opinions and facts, physical and mental abilities, non-severe impairments, and Plaintiff's subjective evidence of symptoms." *Stanton v. Astrue*, No. 07-cv-0803, 2009 WL 1940539, at *9 (N.D.N.Y. July 6, 2009) (citing 20 C.F.R. § 404.1545). Under the fourth step of the sequential evaluation process, the ALJ reviews the RFC and compares it to the demands of a claimant's past relevant work. *See* 20 C.F.R. § 404.1520(f). If the claimant is still able to perform the type of activities required by his past employment, he is deemed not to be disabled. *See* 20 C.F.R. § 404.1520(e).

According to the Plaintiff, the ALJ erred by: (1) failing to give controlling weight to the testimony of his treating physician, Daniel Korman, M.D. ("Dr. Korman"); (2) affording too much weight to the testimony of the consultative examiner, Erlinda Austria, M.D. ("Dr. Austria"); (3) misinterpreting the testimony of the impartial medical expert, Jeffrey Hansen, M.D. ("Dr. Hansen"); and (4) improperly discounting the credibility of the Plaintiff's testimony regarding the

severity of his impairments. For the following reasons, the Court finds that each of the Plaintiff's objections are without merit.

### 1. As to the Testimony of Dr. Korman.

Dr. Korman, an internist, treated the Plaintiff for complaints of lower back pain and left knee pain from December 30, 2008 through December 7, 2010. On May 21, 2015, Dr. Korman completed a medical source statement, opining that the Plaintiff could: walk up to one-to-two city blocks slowly; sit for fifteen-to-twenty minutes at one time before needing to get up; stand fifteen-to-twenty minutes before needing to sit down or walk around; sit for two hours total in an eight-hour workday; stand or walk for less than two hours total in an eight-hour workday; occasionally lift up to ten pounds; and never stoop, crouch, climb ladders, or climb stairs. The ALJ gave "some weight" to this opinion. The Plaintiff argues that the ALJ violated the treating physician rule by failing to afford Dr. Korman's testimony controlling weight. The Court disagrees.

In fashioning the claimant's RFC, the treating physician rule requires the ALJ to give the opinion of a claimant's treating physician as to the nature and severity of the claimant's impairments "'controlling weight,'" so long as it is "'well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record.'" *Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003) (quoting 20 C.F.R. § 404.1527(d)(2)); *Bonneau v. Astrue*, No. 13-cv-26, 2014 WL 31301, at *5 (D. Vt. Jan. 3, 2014) (same). Although the Court is generally required to defer to the medical opinion of a treating physician, *see Schisler v. Sullivan*, 3 F.3d 563, 567–68 (2d Cir. 1993), those findings may not be accorded controlling weight if they are inconsistent with other substantial evidence, including the opinions of other medical experts. *Burgess*, 537 F.3d at 128.

The ALJ must consider the following factors if it decides to afford less than controlling weight to a treating physician's opinion: "(1) the frequen[c]y, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist." *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013); *Halloran*, 362 F.3d at 32 (same); 20 C.F.R. § 404.1527(c)(2). The ALJ further must explain the weight assigned to the opinion of a treating physician. Failure to provide "good reasons" for not assigning the proper weight of a treating physician is grounds for remand. *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015); *see also Halloran*, 362 F.3d at 32 ("We do not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physician's opinion and we will continue remanding when we encounter opinions from ALJs that do not comprehensively set forth reasons for the weight assigned to a treating physician's opinion.").

In order for the Court to determine whether a treating physician's opinion is consistent with other substantial evidence in the administrative record, the Court must keep in mind that "genuine conflicts in the medical evidence are for the ALJ to resolve." *Gunter v. Comm'r of Soc. Sec.*, 361 F. App'x 197, 199 (2d Cir. 2010) (quoting *Burgess*, 537 F.3d at 128); *see also Garcia v. Barnhart*, No. 01-cv-8300, 2003 WL 68040, at *7 (S.D.N.Y. Jan. 7, 2003) (holding that the ALJ cannot substitute his or her "own assessment of the relative merits of the objective evidence and subjective complaints for that of a treating physician").

Here, the ALJ correctly applied the treating physician rule. The ALJ properly discounted the weight afforded to Dr. Korman's May 2015 medical source statement because it came several years after the Plaintiff's date last insured and contradicted his earlier assessments in the treatment notes from the period in which he treated the Plaintiff. R. at 493. After-the-fact medical

9

assessments are inherently less credible indicators of a patient's impairments than medical assessments made during the relevant period. *See, e.g.*, *Dailey v. Barnhart*, 277 F.Supp.2d 226, 233 n. 14 (W.D.N.Y.2003) ("Medical opinions given after the date that [the claimant's] insured status expired are taken into consideration if such opinions are relevant to her condition prior to that date."); *Papp v. Comm'r of Soc. Sec.*, 05-cv-5695, 2006 WL 1000397 at *15 (S.D.N.Y. Apr. 18, 2006) ("The reports that [the doctor] prepared on July 15, 2002 and June 25, 2003 describe [claimant's] symptoms as of those dates, which are well after [the claimant's] June 30, 2001 last insured date, and therefore they are irrelevant to this analysis."). *Post hoc* opinions deserve even less credit when they contradict the treating source's earlier assessments. *See Wider v. Colvin*, 245 F. Supp. 3d 381, 390 (E.D.N.Y. 2017) (Spatt, J.) ("[T]he Second Circuit has often held that ALJs can disagree with doctors' medical opinions when they differ from treatment notes.") (collecting cases). Therefore, the ALJ properly elevated Dr. Korman's prior assessment that the Plaintiff could lift up to twenty pounds as well as sit, drive, stand, and/or walk for up to thirty minutes at a time over the more severe impairments articulated in his medical source statement.

In addition, the ALJ found Dr. Korman's medical source statement to be inconsistent with other evidence in the record, namely, the assessments of Dr. Hansen and Dr. Austria, as well the Plaintiff's own statements. The ALJ also cited a multitude of diagnostic test results, including MRIs from 2008, 2009, and 2010 and treatment records from Dr. Korman, Dr. Epstein, Dr. Labiak, and Dr. Groth from 2009 through 2010. R. at 490–91, 494–95. Treating source opinions are not entitled to controlling weight when contradicted by this sort of evidence. *See Halloran*, 362 F.3d at 32 ("[T]he opinion of the treating physician is not afforded controlling weight where, as here, the treating physician issued opinions that are not consistent with other substantial evidence in the record, such as the opinions of other medical experts."). While the Plaintiff may disagree with the

ALJ's assessment, his disagreement standing alone does not warrant reversal of the ALJ's decision. *See Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002) ("Genuine conflicts in the medical evidence are for the Commissioner to resolve.")

The Plaintiff also faults the ALJ for apparently failing to discuss the factors to-be-considered when determining the weight given to the opinion of a treating source enumerated in 20 C.F.R. § 404.1527(c)(2). In this regard, the Plaintiff is incorrect. The ALJ directly considered each of the relevant factors. The ALJ described Dr. Korman's treatment notes during the relevant period and gave Dr. Korman's medical source statement "[s]ome weight" because it was "based on a treatment relationship" R. at 493; *see also id.* at 491–92, 494–95. The ALJ also discussed the medical evidence supporting Dr. Korman's opinion and its consistency with the overall record. "[R]ote recitation of every factor is not required, as long as the ALJ's reasoning and adherence to the regulation are clear. At core, an ALJ must comprehensively explain the reasons for the weight he or she ultimately assigns to a treating physician." *Rosario v. Colvin*, 13-cv-1627, 2017 WL 1314215, *21 (S.D.N.Y. Feb. 7, 2017).

Finally, the Plaintiff argues that the Commissioner erred by failing to consider additional evidence submitted to the Appeals Council that allegedly "clarifies the record" and contradicts the ALJ's decision to assign less weight to Dr. Korman's opinion. He specifically refers to the August 24, 2010 deposition testimony of Dr. Korman during a workers compensation hearing. "When the Appeals Council denies review after considering new evidence, [courts] simply review the entire administrative record, which includes the new evidence, and determine, as in every case, whether there is substantial evidence to support the decision of the Secretary." *Perez*, 77 F.3d at 46. Therefore, the relevant question is not whether the Appeals Council improperly failed to consider

the additional testimony, but rather whether that testimony supports an RFC determination different from the one fashioned by the ALJ.

The Court finds that it does not. Of importance, Dr. Korman based his deposition testimony on his physical review of the Plaintiff's treatment records during the relevant period, not a separate or unbeknown examination. *See, e.g.*, R. at 115 ("I'm looking at my report on the initial presentation and I have nothing listed and I will look at subsequent exams and see if there is any issue. . . ."), 118 ("If I read through my report from the first time, I saw him . . . ."). The record before the ALJ included all of the findings discussed by Dr. Korman in his deposition. *Id.* at 769–73, 811–15, 832–36, 844–48. Consequently, Dr. Korman's testimony is purely duplicative of the records contemporaneous with the relevant period, and would not support a different RFC finding.

Objecting to the characterization of Dr. Korman's testimony as duplicative, the Plaintiff claims the evidence was material because it "summarized, explicated and clarified the evidence with the Doctor's contemporaneous opinions." ECF 9 at 8. However, the Plaintiff fails to identify anything about the medical record misunderstood by the ALJ or which would otherwise require greater explanation. Notwithstanding any additional clarifications provided by Dr. Korman in his workers compensation deposition, the fact remains that his contemporaneous treatment notes, as well as the opinions of two other medical sources, contradicted the medical source statement he provided to the ALJ. The Court sees no reason why additional clarification would entitle Dr. Korman's *post hoc* assessment to more weight.

Therefore, the Court finds that the ALJ assigned the appropriate amount of weight to the testimony of Dr. Korman.

**2. As to the Testimony of Dr. Austria.**

Dr. Austria, a general surgeon, conducted a consultative orthopedic examination of the Plaintiff on December 17, 2010. Dr. Austria diagnosed an injury to the Plaintiff's lower back at work in October 2008; and a herniated and bulging disc by history. She assessed no restrictions to activities of the head, neck, and arms; mild restrictions to squatting, bending, and prolonged sitting, standing, and walking; and a mild restriction and limited range of motion in activities involving the left hip and left knee. The Plaintiff argues that the ALJ erred by affording significant weight to Dr. Austria's assessment of "mild" limitations.

According to the Plaintiff, the Second Circuit has made clear that "ALJs should not rely heavily on the findings of consultative physicians after a single examination." *Selian*, 708 F.3d at 419. While the Plaintiff is correct in that regard, the Second Circuit has also recognized that "[t]he report of a consultative physician may constitute . . . substantial evidence" supporting departure from the treating physician rule. *Petrie v. Astrue*, 412 F. App'x 401, 405 (2d Cir. 2011); *Mongeur*, 722 F.2d at 1039. Here, the Court need not decide whether Dr. Austria's report may serve as substantial evidence standing alone, because her testimony comports with the medical record as a whole. The observations described after her examination of the patient are consistent with Dr. Korman's treatment notes of the patient during the relevant period and the assessments of Dr. Hansen, the impartial medical examiner.

In addition, the Plaintiff claims Dr. Austria's findings that the Plaintiff had the aforementioned "mild" restrictions conflicts with her observations that the Plaintiff had significant loss of motion in his back, walked with a limp, had positive straight leg raising, difficulty with heel toe walk, and could squat only three quarters. The Plaintiff fails to articulate how those observations conflict with Dr. Austria's assessment. Dr. Austria recognized that the Plaintiff

possessed certain impairments, and incorporated those impairments into her medical source statement. *See* R. at 883–84. There is nothing readily apparent about the impairments cited by the Plaintiff that would require a more severe restriction. To the extent that the Plaintiff's objection is rooted in the use of the word "mild" to describe his restrictions, the Court notes that use of that term does not render an otherwise sufficiently detailed opinion vague or non-substantial. *See Lewis v. Colvin*, 548 F. App'x 675, 677–78 (2d Cir. 2013) (summary order) (affirming "ALJ's determination that [claimant] could perform 'light work'" based on consultative physician's "assessment of 'mild limitations for prolonged sitting, standing and walking,' and direction that [claimant] should avoid 'heavy lifting, and carrying'").

Therefore, the Court finds that the ALJ assigned the appropriate weight to the testimony of Dr. Austria.

### 3. As to the Testimony of Dr. Hansen.

The ALJ proffered medical interrogatories to Dr. Hansen, an orthopedic surgeon and impartial medical expert. On April 10, 2016, Dr. Hansen reviewed the medical evidence and responded to the interrogatories he received from the ALJ. Dr. Hansen opined that the Plaintiff's physical impairments, prior to his date last insured, were mechanical lower back pain with degenerative and bulging discs at the L4-L5 and L5-S1 levels and minimal knee pain. Dr. Hansen stated that: the Plaintiff's impairments neither met nor equaled Listings 1.04A and 1.04C because there were no substantial neurological deficits; the Plaintiff only had back pain and his MRI was not remarkable; and the Plaintiff underwent left knee arthroscopic surgery in October 2011 with minimal findings. Dr. Hansen also completed a medical source statement regarding the Plaintiff's ability to perform work-related activities, assessing that: the Plaintiff could lift up to 50 pounds and carry up to ten pounds frequently; that the Plaintiff could sit for three hours at a time, stand

for one hour continuously, and walk for 30 minutes at a time. Dr. Hansen opined that, during the course of an eight-hour workday, the Plaintiff could: sit for six hours, stand for three hours, and walk for one hour; frequently climb stairs and ramps, balance, stoop, and/or crouch; and occasionally climb ladders and scaffolds, kneel, and/or crawl.

The Plaintiff cross-examined Dr. Hansen at a supplemental hearing held on July 26, 2016. The Plaintiff contends that the ALJ erred by not adopting Dr. Hansen's testimony at that hearing that the Plaintiff's impairment met Listing 1.04A. The Court concurs with the ALJ's decision not to fully credit that testimony, because it was inconsistent and indefinite. Despite assessing that the Plaintiff did not meet Listing 1.04A in response to the ALJ's interrogatories, Dr. Hansen initially testified that the Plaintiff's impairments probably met the Listing. R. at 450. Dr. Hansen then added that if the Plaintiff does not meet or equal Listing 1.04A, "he comes awfully close to equaling" the Listing since 2008. *Id.* at 451. Dr. Hansen then stated that the Plaintiff's impairment neither met nor equaled Listing 1.04A *Id.* at 452. Thereafter, Dr. Hansen testified that the Plaintiff's impairment met Listing 1.04A in 2009. *Id.* at 454. Due to the conflicting nature of Dr. Hansen's testimony in this regard, it was proper for the ALJ to give it "only some weight." *Id.* at 494.

According to the Plaintiff, the ALJ should have sought an opinion from a subsequent expert if he deemed Dr. Hansen's opinion insufficient. The Plaintiff's argument appears to assert that the ALJ breached his obligation to fully develop the record. To satisfy that obligation, an ALJ need only ensure that he or she possesses a complete picture of the claimant's medical history. *See Valoy v. Barnhart*, No. 02-cv-8955, 2004 WL 439424, at *7 (S.D.N.Y. Mar. 9, 2004) ("While the ALJ must supplement the record through his own initiatives when the record is incomplete or inadequate, this burden does not attach when the record is ample."); *Kennedy v. Comm'r of Soc. Sec.*, No. 17-cv-908, 2019 WL 988889, at *2 (W.D.N.Y. Mar. 1, 2019) ("[T]he ALJ's obligation

to develop the record is not infinite and limitless, and does not extend to circumstances where the record contains sufficient evidence to allow the ALJ make her determination."). There is no concurrent requirement that the ALJ solicit additional testimony whenever part of an impartial expert's testimony is unsatisfactory. The ALJ determined that Dr. Hansen had a "perceived lack of understanding . . . of the listings," which are set by the Commissioner, not medical sources. R. at 494. Further, Dr. Hansen testified that the Plaintiff had no neurological compromise and no central canal stenosis. *Id.* As a result, the ALJ possessed sufficient evidence to find that the Plaintiff failed to meet Listing 1.04A without obtaining a new impartial medical expert.

The Plaintiff also disagrees with the ALJ's decision to credit other aspects of Dr. Hansen's testimony, notwithstanding his apparent confusion regarding the Listings. However, in doing so, the ALJ noted that Dr. Hansen's testimony at the hearing was consistent with the findings of Dr. Korman and Dr. Austria, as well as the Plaintiff's own statements. The ALJ may choose to adopt some, but not all, of a medical source's opinion. *See Barry v. Colvin*, 606 F. App'x 621, 624 (2d Cir. 2015) (summary order) (finding that an ALJ is not bound to include in the RFC finding every specific imitation assessed by a consultative examiner, and could, instead, exercise discretion in reviewing the record evidence in its totality); *Pellam v. Astrue*, 508 F. App'x 87, 90 (2d Cir. 2013) (finding that consultative examiner's opinion largely supported the ALJ's RFC determination even if ALJ did not credit all of the consultant's findings); *Veino*, 312 F.3d at 588 (finding that an ALJ has discretion to accept or reject various portions of a treating physician's opinion, based upon substantial evidence in the record).

Therefore, the Court finds that the ALJ did not err in his assessment of Dr. Hansen's testimony.

**4. As to the Plaintiff's Testimony.**

At the hearing, the Plaintiff testified regarding his symptoms and the severity of the pain he suffers. According to the Plaintiff, during the relevant period, he could sit for 15 minutes; if he pushed himself, his back would lock up, making him unable to get up; and he could not stand up straight. He had knee and back surgeries in 2010 and 2011. The knee surgery "helped" his knee but not his back. Post-surgery, the Plaintiff can sometimes sit for 15 minutes, but after 15 minutes his left leg goes numb and his back left side locks up. He can stand for about 20 minutes without a cane and 30 or 45 minutes with a cane. He cannot bend over and can carry about ten pounds.

The ALJ found that the Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that his statements concerning the intensity, persistence and limiting effects of those symptoms were inconsistent with the medical evidence and other evidence in the record. The Plaintiff argues that the ALJ erred in making that determination. The Court disagrees.

To evaluate a claimant's credibility:

> [t]he regulations set forth a two-step process to evaluate a claimant's testimony regarding his symptoms. First, the ALJ must consider whether the claimant has a medically determinable impairment which could reasonably be expected to produce the pain or symptoms alleged by the claimant. Second, if the ALJ determines that the claimant is impaired, he then must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms. If the claimant's statements about his symptoms are not substantiated by objective medical evidence, the ALJ must make a finding as to the claimant's credibility. Such an evaluation of a claimant's credibility is entitled to great deference if it is supported by substantial evidence. In assessing the claimant's credibility, the ALJ must consider all of the evidence in the record and give specific reasons for the weight accorded to the claimant's testimony. The regulations require the ALJ to consider not only the objective medical evidence, but also:
>
> 1. The individual's daily activities;
>
> 2. The location, duration, frequency, and intensity of the individual's pain or other symptoms;

3. Factors that precipitate and aggravate the symptoms;

4. The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;

5. Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;

6. Any measures other than treatment the individual uses or has used to relieve pain or other symptoms ...; and

7. Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

*Matejka v. Barnhart*, 386 F. Supp. 2d 198, 205–06 (W.D.N.Y. 2005) (quoting *Murphy v. Barnhart*, No. 00-cv-9621, 2003 WL 470572, at *10–11 (S.D.N.Y. Jan. 21, 2003) (citing 20 C.F.R. § 404.1529(c))); *see also Wright v. Astrue*, No. 06-cv-6014, 2008 WL 620733, at *3 (E.D.N.Y. Mar. 5, 2008) (listing the same seven factors); *Knapp v. Apfel*, 11 F. Supp. 2d 235, 238 (N.D.N.Y. 1998) ("[A] finding that the Commissioner has failed to specify the basis for his conclusions is [a] compelling cause for remand.").

First, the Plaintiff claims that the ALJ failed to discuss his credibility determination with sufficient detail. An ALJ's opinion "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Tornatore v. Barnhart*, No. 05-cv-6858, 2006 WL 3714649, at *6 (S.D.N.Y. Dec. 12, 2006) (citing SSR 96-7p).

Contrary to the Plaintiff's suggestion, the ALJ explicitly addressed the Plaintiff's testimony. *See* R. at 495 ("The claimant testified that he has low back pain and left knee pain, and uses a cane when he needs to go more than 500 feet. Without a cane, he can stand for only 15 minutes. He could only pick up 10 pounds off a table, but could not carry it."). After discussing

18

the details of the medical evidence at great length, the ALJ found his testimony to be "inconsistent with the medical evidence in the record." *Id.* The ALJ continued:

> He told the consultative examiner in December 2010 that he is able to lift 20 pounds. He also indicated that he can perform almost all activities of daily living. The remainder of the medical evidence supports this as well. Up until his surgeries in 2011, the claimant was treated only conservatively. He had indicated in the record that he was getting relief with a TENS unit and his Neurontin medication was helping him the most. He also did not have any orthopedic hospital admissions prior to the date last insured.

*Id.* Therefore, the Court finds that the ALJ "'explain[ed] [his] decision with sufficient specificity to permit a reviewing court to decide whether there [were] legitimate reasons for the ALJ's disbelief[.]'" *Owens v. Berryhill*, No. 17-cv-2632, 2018 WL 1865917, at *9 (E.D.N.Y. Apr. 18, 2018) (Spatt, J.) (quoting *Correale-Englehart v. Astrue*, 687 F. Supp. 2d 396, 435 (S.D.N.Y. 2010)).

Second, the Plaintiff argues that the ALJ failed to consider evidence beyond the clinical findings, violating his obligation to apply the seven enumerated factors discussed above. Again, the Plaintiff is incorrect. In addition to the above excerpts, the ALJ discussed the factors extensively throughout the opinion. The ALJ detailed the Plaintiff's reports of pain and other symptoms to various doctors through the relevant period, as well as the variety of treatments he received. *See* R. at 491–94. ALJs need not robotically walk through their assessments of the factors relevant to determining a claimant's credibility on a factor-by-factor basis. *See Cichocki v. Astrue*, 534 F. App'x 71, 76 (2d Cir. 2013) (holding that an ALJ's failure to discuss factors irrelevant to his credibility determination did not require remand as the ALJ provided specific reasons for his credibility determination and the court could "glean the rationale" of the ALJ's decision from the record).

Therefore, the Court finds that the ALJ assigned the appropriate weight to the Plaintiff's testimony.

### III.  CONCLUSION.

For the reasons stated above, the Plaintiff's motion for judgment on the pleadings pursuant to Rule 12(c) is denied in its entirety, and the Defendant's motion for judgment on the pleadings dismissing the Complaint is granted in its entirety.

The Clerk of the Court is respectfully directed to close this case.

It is **SO ORDERED**:

Dated:  Central Islip, New York

   December 4, 2019

   /s/ Arthur D. Spatt

   ARTHUR D. SPATT

   United States District Judge